# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| RONALD W. HANSEN and PAIGE R. HANSEN,  Plaintiff,  vs.  VISTA OUTDOORS INC., VISTA OUTDOOR SALES LLC, SAVAGE ARMS CO., and SAVAGE ARMS INC.,  Defendant. | No. 17-CV-3002-LTS  **ORDER** |

## I. INTRODUCTION

This matter is before the Court pursuant to plaintiffs' Motion to Compel filed timely on March 28, 2017. (Doc. 16). Plaintiffs requested a telephonic oral argument on the motion. Defendants filed a timely resistance on April 10, 2017. (Doc. 22). On April 12, 2017, the Court heard the parties' arguments on the motion. (Doc. 23).

## II. PROCEDURAL HISTORY

Plaintiff, Ronald Hansen, alleges that on or about December 6, 2014, he was injured when a 10ML-II muzzle-loading rifle manufactured by Savage exploded. Plaintiffs (Mr. Hansen and his wife) filed this suit in the Iowa District Court In and For Franklin County. (Doc. 8). Defendants timely removed this suit to federal court under diversity jurisdiction. (Doc. 2). Plaintiffs' petition at law reads as follows: "Count I (Facts Applicable to All Counts . . . [rifle exploded] causing severe personal injury to Plaintiff, Ronald W. Hansen); Count II (Products Liability); Count III (Negligence); Count IV (Compensatory Damages); and Count V (Exemplary Damages)." (Doc. 8).

1

Jury trial in this matter is scheduled for November 19, 2018, at 9:00 a.m. before Chief Judge Leonard T. Strand. (Doc. 19). Furthermore, the Court recently entered the standard Stipulated Protective Order. (Doc. 24).

### III.   MEET AND CONFER REQUIREMENT

Both the local rules and the Federal Rules of Civil Procedure impose a meet-and-confer requirement. Before the parties can file discovery motions with the Court, they must meet and confer in good faith with each other in an attempt to resolve the dispute without court intervention. FED. R. CIV. P. 37; LR 37, 7(l). Rule 37 of the Federal Rules of Civil Procedure requires that a motion to compel include a certification that the movant "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). Likewise, the applicable local rule mandates that the movant attach, to his or her motion to compel, a declaration attesting that "[c]ounsel, in good faith, has conferred personally with counsel for the opposing party in an attempt to resolve or narrow by agreement the issues raised by the motion; [t]he lawyers have been unable to reach an agreement; and [t]he nature of the disagreement." LR 37(a). Alternatively, the local rule also allows counsel to attach a declaration attesting that "a personal conference with opposing counsel was impossible" with a description of the efforts taken to schedule a personal conference. *Id*. The local rule specifies that merely "[a]n exchange of written communications or a single telephone message will not, by itself" satisfy the requirement of attempting to confer in good faith. *Id*.

As other courts have noted, courts take the meet-and-confer requirement seriously. As the District Court in the Eastern Division of Missouri noted:

> The meet-and-confer requirement is "not an empty formality." *Robinson v. Napolitano,* No. Civ. 08–4084(VLD), 2009 WL 1586959, *3 (D. S.D. 2009). "Good faith" requires "a genuine attempt to resolve the discovery

2

> dispute through nonjudicial means," and "conferment" requires the parties "to have had an actual meeting or conference." *Shuffle Master, Inc. v. Progressive Games, Inc.,* 170 F.R.D. 166, 171 (D. Nev. 1996). Therefore, prior to filing a motion to compel, "a moving party must personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." *Id.* Unilateral communication demanding that the other side comply with a discovery request does not satisfy the requirement. *Id.* at 172; *see also Alexander v. Federal Bureau of Investigation,* 186 F.R.D. 197, 198–99 (D. D.C. 1999) (stating that calling opposing counsel and leaving a vague message two hours before filing the discovery motion does not satisfy the meet-and-confer requirement). Nor is the requirement satisfied by communication in which a party indicates a motion to compel will be filed if the opposing party does not comply with discovery requests. *Bolger v. District of Columbia,* 248 F.R.D. 339, 343–44 (D. D.C. 2008).

*Williams v. Central Transport Intern., Inc.*, No. 4:13-CV-2009 (CEJ), 2014 WL 6463306, at *2 (E.D. Mo. Nov. 17, 2014).

## IV. ANALYSIS

Plaintiffs move to have the Court compel defendants to take two actions. The first action involves defendants consenting to the testing of a part of the rifle barrel that peeled away during the explosion. The second action involves compelling defendants to pay an alleged balance due.

*A. Testing of rifle*

Plaintiffs want to complete a comprehensive failure analysis of the instant 10ML-II muzzle-loading rifle that exploded. Two pieces of the rifle's barrel peeled off during the explosion, namely fracture surface 1 [bottom barrel fracture] and fracture surface 2 [top barrel fracture]. On January 17-18, 2017, a joint inspection occurred at Affiliated MRD L.L.C. in Camden, New Jersey. At the inspection, plaintiffs were represented by

attorney Darwin Bunger and expert Dr. Richard F. Lynch and defendants were represented by counsel and expert Dr. Robert Block. During this inspection, fracture surface 2 was tested via optical and scanning-electron microscope. At the inspection, defendants' expert objected to any testing of fracture surface 1. Defendants' expert was "concerned that doing so would entirely destroy the current condition of the rifle at the fracture location and noted that removing both fracture areas was unnecessarily duplicative." (Doc. 22, at 5). Plaintiffs, however, allege that "[w]ithout the study of the other fracture area, plaintiffs [sic] study and analysis is inconclusive." (Doc. 16, at 3) (citing letters from Dr. Richard Lynch (Doc. 16-1) and Dr. Dan Pattanayak (Doc. 16-2)). Both in briefing and during argument, plaintiffs contend that the testing of fracture surface 1 is proper under the parties' joint protocol (Doc. 22-1) and that defendants are improperly withholding their consent. Furthermore, plaintiffs contend that they satisfied the meet-and-confer requirement mandated by the federal and local rules for motions to compel, as follows:

> Before filing this motion, Plaintiffs' counsel, affiant Steven J Crowley had a personal phone conversation with defense counsel . . . [and] explained that it was plaintiff's position that the defendant had no right to object to the same testing of the peel and fracture surface of one section, as had been done on other surface . . . plaintiffs' counsel explained he would have no choice but to bring this issue to the attention of the Court if the defendants did not promptly agree to the continued testing as originally agreed . . . [a]s of the filing of this motion, plaintiffs have received no indication that defendants will withdraw their objection and agree to allow plaintiffs [sic] experts to continue and complete their testing of the fracture surfaces."

Doc. 16, at 4-5. Affiant Mr. Crowley, plaintiffs' counsel, also stated that it was his recollection that defendants' counsel, Mr. Pisciotti, had "indicated he wanted to 'review' the proposed protocol and see if the defendants changed their mind." (*Id.*, at 4). The Court found no evidence of this. Mr. Crowley contends that the protocol never changed.

On the other hand, defendants resist. Procedurally, defendants allege that plaintiffs failed to provide a proposed protocol for destructive partial testing despite plaintiffs stating they would provide one. Substantively, defendants allege that their refusal to test fracture surface 1 was permissible under the current protocol, and thus they never breached it. The Court will now analyze each of these arguments.

First, defendants contend that there is no "dispute" here as they are amenable to agreeing to a new protocol to cover destructive partial testing, and that defendants have explicitly expressed such to the plaintiffs. In fact, plaintiffs previously indicated that they would provide a proposed protocol. Indeed, upon the Court's own review of the attorneys' email exchanges, defendants accurately described these events.

> **On February 24, 2017**, plaintiffs' counsel emailed: "If you agree [to the sampling and testing of fracture surface 1], I will draft a proposed order for our approval." (Doc. 22-9, at 3).
>
> **On February 25, 2017**, defendants' counsel responded: "please send a detailed protocol so we know exactly what is being proposed and so we can assess if there is a way to achieve the purposes of both parties' experts." (Doc. 22-9, at 2).
>
> **On February 26, 2017**, plaintiffs' counsel replied: "We will put our proposed protocol into a draft order and send it to you." (Doc. 22-9, at 2).

The Court finds this email exchange unambiguous. Defendants are open to establishing a new protocol for testing of fracture surface 1, and plaintiffs agreed to provide such a proposed protocol. Plaintiffs never did. Now, plaintiffs seek court intervention to compel the compliance to the current protocol (Doc. 22-1). The Court agrees with defendants who argue that there is no "dispute" to rule on here. Defendants contend that "[s]ince Plaintiffs have not provided a protocol, [ ] this issue is not yet ripe for determination by the Court [and] Plaintiffs' motion on this issue is premature." (Doc.

22, at 11). Defendants cite *Chaffin v. Eichert*, No. 3:09CV00002, 2009 WL 322950, *1-2 (E.D. Ark. Feb. 9, 2009) (court denied motion to compel as premature as there was no pending requests by any of the parties regarding plaintiff's medical records so there was no dispute as to the discoverability of her medical records).

Overall, the Court agrees. This issue is premature. Only if the parties are unable to agree to a new protocol regarding the sampling and testing of fracture surface 1 may plaintiff file a motion to compel again. The Court finds plaintiffs' contention that there exists sufficient photographs showing how the rifle looked pre-destructive testing to illustrate such to any jury to be very persuasive. *See* Doc. 22-8, at 2 (plaintiffs stated: "I point out that there must be 500 pictures of [the rifle] before any fracture cut was made—well, at least 100—so the jury will have the reconstructed fractures or visual of the gun right after exploding and pre-cut, and many photos of the weapon pre-cut, to see the explosion effects.); *see also* Doc. 22, at 12 (discussing four-factor balancing test). Defendants' objection to the additional testing appears to be a vague, general assertion that photographs are not sufficient. If the parties are unable to agree to the partial destruction sought by plaintiff, the Court thinks it likely, under the balancing test courts employ on whether to permit destructive testing, that it would permit such testing. But the Court agrees with defendants that that issue is not currently ripe before the Court, and certainly not fully briefed.

Additionally, the Court agrees with defendants that their current refusal to test fracture surface 1 was not a breach of the protocol currently in place (Doc. 22-1). The attached protocol reads: "[b]y agreement among all of the participants, areas of particular interest in the broken surfaces will be cut away from their surroundings and prepared for examination in the scanning electron microscope." (Doc. 22-2, at 4 ¶5). Under the language "[b]y agreement among all of the participants," defendants can disagree to such testing. Overall, the Court finds that the motion seeking to compel testing and sampling

of fracture surface 1 is premature. The Court *sua sponte* orders that plaintiffs provide a new protocol to defendants. This proposed protocol should include adequate safeguards and address defendants' demands to "identify the exact portion of the fractured area to be removed, and outline the procedures and steps by which this destructive testing is to be accomplished." (Doc. 22, at 11). If the parties are unable to agree to a protocol that would permit the additional testing plaintiffs seek to occur, then plaintiffs can file a motion to compel the testing, specifically briefing the issue of whether the competing interests of the parties weighs in favor of allowing the partial destruction of the evidence.

### B. Payment due

Plaintiffs allege that the parties agreed to split (50/50) the costs of the inspection of the rifle that occurred on January 17-18, 2017, in New Jersey. The bill for the inspection by Affiliated MRD, LLC (MRD) was $12,711.00. (Doc. 16-3). Defendants have paid $4,414.50. (Doc. 16-4). Thus, plaintiffs move to compel defendants to pay the remaining balance of $2,214.00 to MRD.

Procedurally, defendants allege that plaintiffs' motion to compel is deficient as plaintiffs failed to meet and confer with defendants on this issue. Substantively, defendants allege that the bill overstated the fees for the inspection, and that plaintiffs are essentially seeking to have "Defendants subsidize Plaintiffs' expert's work." (Doc. 22, at 8 n.5). *See* Doc. 22, at 6 ("[T]he invoice spanned almost ninety days. Defendants had agreed only to share in the costs associated with the joint inspection (January 17-18, 2017 from 10:00 a.m. to 5 p.m.))." Defendants seek an itemized invoice to determine if they were "charged for work outside of this two-day [inspection] period." (Doc. 22, at 7).

The Court reviewed the parties' communications on this subject, which disclosed the following pertinent exchanges:

**January 24, 2017**—plaintiffs emailed defendants referencing the prior agreement to split the cost of the lab testing portion, while each party would pay for its own experts "their fee for the exercise."

**February 8, 2017**—plaintiffs received a bill for $12,711.00 from MRD. (Doc. 16-3).

**March 1, 2017**—defendants emailed plaintiff. Defendants' email stated: "The Invoice from [MRD] w[as] not itemized. I apologize, but the client requires that. Also, our expert believed that 12.5 hours of laboratory time was used while 36.4 hours were billed . . .. We are amenable to paying our fair share of the Invoice, but it seems [MRD] is taking advantage of both of us. Would you like us to ask them to correct the bill, or would you prefer to do that?" (Doc. 16-5).

**March 17, 2017**—defendants submitted a check to MRD for $4,414.50 (calculated to be half of estimated "reasonable joint inspection costs") (Doc. 22, at 7). Attached to the check was a letter stating "[p]lease contact me with any questions regarding this payment."[1]

**March 23, 2017**—defendants sent a deficiency letter to plaintiffs. Defendants wrote that they "believe the fees for sharing the Affiliated Testing facility were excessive . . . we sent you a check on March 17, 2017 . . . on what we believed is reasonable." (Doc. 22-10).

The Court addresses defendants' procedural argument first. Defendants allege that plaintiffs failed to satisfy the meet-and-confer requirements of the federal and local rules because "[a]fter Defendants paid the fees for the joint inspection, Plaintiffs' counsel never contacted defense counsel about the amount of the payment or otherwise objected to the payment." (Doc. 22, at 11). Upon a thorough review of the briefings and attachments, there is nothing to indicate that a meet-and-confer on this issue occurred

---

[1] Defendants contend that "[h]aving received no response from Plaintiffs, and in the spirit of cooperation, Defendants issued a check in the amount of $4,141.50 [sic], reflecting full payment for the use of the laboratory as well as 20 hours of work at a rate greater than the technician rates listed in the facility fee sheet." (Doc. 22, at 10).

8

*before* plaintiffs filed their motion to compel. In the motion, plaintiffs write: "[d]efense counsel advised Mr. Bunger by phone that he felt the original bill was too much, so the defendants unilaterally reduced their payment to what they thought was reasonable, without authority of, agreement from MDR LLC or plaintiffs' counsel." (Doc. 16, at 3). Further in the motion, plaintiffs mention having a personal phone call with defendants, prior to filing this instant motion, wherein the testing issue was discussed. (Doc. 16, at 4). However, there is no mention that the billing issue was discussed or even mentioned. Ultimately, this does not suffice to satisfy the meet-and-confer requirements. *See Williams*, 2014 WL 6463306, at *2 ("[A] moving party must personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention.") (citation omitted).

Thus, the Court denies plaintiffs' motion to compel on the issue as it is procedurally defective.[2] Furthermore, the Court *sua sponte* orders plaintiffs to send a detailed, itemized bill to defendants. If a payment agreement cannot be brokered upon receipt of this itemized bill, then the parties may seek court intervention.

## V. SANCTIONS AND AWARD OF FEES

Defendants seek an award of their attorneys' fees and expenses associated with having to file their resistance to plaintiffs' motion. (Doc. 22, at 17). Rule 37 of the Federal Rules of Civil Procedure reads: "If the motion is denied, the court [ ] must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including reasonable attorney's fees." FED. R. CIV. P.

---

[2] As the Court is denying the motion to compel on the bill issue, there is no need to address defendants' request to depose Dr. Dan Pattanayak. (Doc. 22, at 16).

37(a)(5)(B)(2017). The Court may decline to grant such expenses if the motion to compel was "substantially justified or other circumstances make an award of expenses unjust." (*Id.*).

The Court finds sanctions in this instance inappropriate. Plaintiffs' motion to compel was not without merit and arises from a reasonable disagreement about the meaning and reach of the current protocol and cost-sharing agreement. The Court did not reach the merits of either issue (as issue 1 was premature and issue 2 was procedurally defective). The Court is unable to determine at this time whether it is either necessary or appropriate to compel the partial destruction of the firearm, or to compel defendants to pay more toward the costs of the testing that has already taken place. Therefore, the Court finds that other circumstances make an award of expenses unjust and inappropriate.

## VI. CONCLUSION

For the reasons set forth above, the Court **denies** plaintiffs' Motion to Compel (Doc. 16). The Court **orders** that, within **ten (10) days** from the date of this order, plaintiffs shall provide defendants with: 1) a new proposed protocol for the testing of the fracture surface at issue; and 2) a detailed, itemized version of the bill attached as Exhibit C to their motion (Doc. 16-3).

**IT IS SO ORDERED** this 17th day of April, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa