**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

RONALD W. HANSEN,

      Plaintiff,

vs.

SAVAGE ARMS CO.; and SAVAGE
ARMS INC.,

      Defendants.

No. 17-CV-3002-LTS

**ORDER**

---

TABLE OF CONTENTS

I.   Background ................................................................. 3

II.  Defendant's Motion for Independent Medical Examination ........................... 3

  A.   Applicable Law ......................................................... 3

  B.   Discussion ............................................................. 4

III.  Plaintiff's Motion to Compel Discovery ................................................. 8

   A.   Meet-and-Confer ...................................................... 8

   B.   Discussion ............................................................. 8

      1.  Objections ......................................................... 11

      2.  Number of Interrogatories ......................................... 12

      3.  Requests for Production ............................................. 15

      4.  Rule 30(b)(6) Deposition ........................................... 16

IV.  Motion for Extension of Time .......................................................... 17

   A.   Background ........................................................ .....17

   B.   Discussion ............................................................18

V.  Conclusion............................................................................ 21

This matter is before the Court on four motions: 1) defendants'[1] Motion to Require Plaintiff to Submit to an Independent Medical Examination (Doc. 39); 2) plaintiff's Motion to Compel Discovery (Doc. 40); 3) plaintiff's Motion to Continue Trial and Modify Scheduling Order (Doc. 42); and 4) plaintiff's Alternative Motion to Modify/Extend Scheduling Order and Discovery Plan (Doc. 60).[2] Plaintiff filed an untimely resistance to defendants' motion (Doc. 50). Defendants filed timely resistances to both plaintiff's motions (Docs. 47, 48), and plaintiff timely filed replies to both resistances (Docs. 53, 54). The Court held a hearing on the pending motions on December 6, 2017.

For the following reasons, defendants' Motion to Require Plaintiff to Submit to an Independent Medical Examination (Doc. 39) is **granted**; plaintiff's Motion to Compel Discovery (Doc. 40) is **denied in part and granted in part**; plaintiff's Motion to Continue Trial and Modify Scheduling Order (Doc. 42) is **denied**; and plaintiff's Alternative Motion to Modify/Extend Scheduling Order and Discovery Plan (Doc. 60) is **granted in part and denied in part**.

---

[1] Savage Arms Co. has apparently been dissolved and no longer exists. (Doc. 9, at 1 n. 1 "Savage Arms Co. is a dissolved Delaware Corporation and is not a viable legal entity."). However, Savage Arms Co. has not been dismissed from the instant case. Thus, the Court will refer to both Savage Arms Co. and Savage Arms Inc. as the defendants in this matter.

[2] Defendants did not file a resistance to plaintiff's alternative motion (Doc. 60), filed the day before the hearing. Given the circumstances in this case, as well as defendants' limited reservations expressed at the hearing, the Court will rule without waiting for a written resistance. *See* LR 7(e) ("If a motion appears to be noncontroversial, or if circumstances otherwise warrant, the [C]ourt may elect to rule on a motion without waiting for a resistance or response.").

## I. BACKGROUND

Plaintiff filed this case in the Iowa District Court for Franklin County (Doc. 8) and defendants subsequently removed this case to this Court based on diversity jurisdiction (Doc. 2). This Court has diversity jurisdiction.

Plaintiff alleges that while firing a muzzleloader rifle manufactured by Savage Arms, the muzzleloader exploded, causing plaintiff to suffer severe permanent injury to both his right hand and ear. (Doc. 40-1, at 1). Specifically, plaintiff claims approximately 80% loss of hearing in his right ear as a result of the explosion. (*Id.*). Prior to the explosion, plaintiff had never undergone an audiogram to objectively test his hearing; however, plaintiff believes that his hearing was unimpaired prior to the explosion. (Doc. 50-1, at 2).

On November 7, 2017, defendants filed their motion to compel plaintiff to submit to an independent medical examination ("IME") by Dr. Richard S. Tyler, an otolaryngologist, arguing that without the examination, Dr. Tyler "would be subject to cross-examination based on speculation and lack of foundation." (Doc. 39-1, at 2-4). Further, defendants argue that the IME is necessary to ascertain "the extent of [p]laintiff's hearing loss and whether the hearing loss was caused by the subject incident," and whether plaintiff would require surgery. (*Id.*, at 4). In turn, plaintiff filed his motion to compel discovery and his motion to continue the trial date and modify the scheduling order.

## II. DEFENDANTS' MOTION FOR INDEPENDENT MEDICAL EXAMINATION

### A. Applicable Law

Federal Rule of Civil Procedure 35(a)(1) provides that a court "may order a party whose . . . physical condition . . . is in controversy to submit to a physical . . . examination by a suitably licensed or certified examiner." Such an order may only be

entered upon a showing of good cause and "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." FED. R. CIV. P. 35(a)(2). The "good cause" and "in controversy" "requirement[s are] not . . . mere formalit[ies], but . . . plainly expressed limitation[s] on the use of that Rule." *Schlagenhauf v. Holder*, 379 U.S. 104, at 118 (1964).

> [These requirements] are not met by mere conclusory allegations of the pleadings—nor by mere relevancy to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. . . . The ability of the movant to obtain the desired information by other means is also relevant.
>       Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a . . . physical examination . . . has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause,' which . . . are necessarily related.

(*Id.*, at 118-19). Further, the party requesting the examination must provide, upon request, "a copy of the examiner's report," which must be in writing and must "set out in detail the examiner's findings, including diagnoses, conclusions, and the results of any tests." FED. R. CIV. P. 35(b). "'While Rule 35 should be construed liberally in favor of granting discovery, its application is left to the sound discretion of the court.'" *O'Sullivan v. Rivera*, 229 F.R.D. 184, 185 (D.N.M. 2004) (quoting *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 362 (D. Colo. 2004)).

### B.    Discussion

Defendants limit their request for an IME to an examination with respect to plaintiff's hearing loss and explicitly do not seek an IME with respect to his hand injury. (Doc. 39-1, at 3). Plaintiff alleges that neither the "in controversy" requirement nor the

"good cause" requirement has been satisfied in the instant case.[3]  The Court disagrees and finds defendants have satisfied both requirements.

Plaintiff contends defendants have not shown that his hearing is in controversy primarily because there is no evidence indicating hearing loss prior to the explosion, plaintiff did report hearing loss within a short timeframe following the explosion, and there is evidence that defendant suffered a punctured ear drum.  (Doc. 50-1).  Plaintiff further argues that Dr. Tyler has already rendered an opinion and any examination at this time would suffer from faulty methodology and be inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  As such, plaintiff argues that the evidence does not show that plaintiff's hearing loss or the cause of plaintiff's hearing loss is truly in controversy.

Plaintiff first put the issue of his hearing loss into controversy by bringing a claim relating to such.  Further, Dr. Tyler concluded that the statement that plaintiff "lost 80% of his hearing in his right ear" is simply untrue due to a lack of medical evidence in support of this statement.  (Doc. 50-2, at 2).  Thus, whether plaintiff actually suffers from hearing loss is genuinely in controversy.  Dr. Tyler further opined that plaintiff's hearing loss "could have resulted from the accident." (*Id.*, at 4).  Implicit in this statement is the possibility that plaintiff's hearing loss could have resulted from something other than the explosion.  Thus, the cause of plaintiff's hearing loss is likewise in controversy.

The Court also finds that defendants have demonstrated good cause.  Absent the IME, defendants' expert, Dr. Tyler, would be limited to basing his conclusions on the information provided by plaintiff's other medical providers and expert witnesses.

---

[3] Plaintiff's resistance was not timely filed in accordance with Local Rule 7(e), and the Court could grant defendants' motion on that ground alone.  Nevertheless, the Court has considered plaintiff's resistance and has decided this issue on the merits.

Plaintiff could justifiably attack Dr. Tyler's conclusions for the very reason that Dr. Tyler had not examined plaintiff. This could disadvantage defendants in defending against plaintiff's claim because plaintiff's experts, naturally, would be expected to testify that the explosion was the cause of plaintiff's hearing loss. Absent an independent opportunity to verify the accuracy of these claims, defendants would be unable to present an expert who could provide a first-hand account of plaintiff's condition and the causes of that condition. *See O'Sullivan*, 229 F.R.D. at 186-87 ("The Court should afford the Defendants and their expert an opportunity to determine for themselves to what extent, if any, this accident aggravated [plaintiff's] pre-existing injuries and have the opportunity 'to rebut the reports of the plaintiff's expert.'" (quoting *Simpson*, 220 F.R.D. at 362)). Therefore, defendants have demonstrated that good cause exists to order an IME.

Having found that defendants satisfied both the "in controversy" and "good cause" requirements of Rule 35, the Court may properly order an IME. The Court is required to "specify the time, place, manner, conditions and scope of the examination." FED. R. CIV. P. 35(a)(2)(B). The examination is to take place at Wolfe Audiology, 516 S. Division Street, Suite 120, Cedar Falls, IA 50613, on January 16, 2018, at 10:30 a.m. The examination will consist of a physical examination of plaintiff's ears, testing of plaintiff's hearing, and those questions Dr. Tyler deems necessary to ascertain the extent and cause of plaintiff's hearing loss and associated symptoms. Dr. Tyler may employ those methods he deems medically necessary to conduct the examination. Defendants are not required to produce a list of questions Dr. Tyler anticipates asking plaintiff prior to the examination. To submit such a list for pre-approval, as plaintiff requests, would limit Dr. Tyler's ability to ask any follow-up questions that may be helpful and that may not be capable of anticipation prior to the examination. *See Roman v. II Morrow, Inc.*, 173 F.R.D. 271, 273 (D. Or. 1997) ("All of the questions that a medical doctor needs to ask, in particular the follow-up questions, cannot be determined in advance of the medical

examination."). Defendants shall bear the costs of the examination. Plaintiff's request that defendants pay plaintiff's travel expenses to and from the exam, as well as lost wages, is denied. Plaintiff's request that the examination be recorded is further denied. To the extent plaintiff questions the validity of the examination, plaintiff may raise such issues on cross-examination. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (citations omitted)).

Plaintiff's final concern with respect to the examination is the potential waiver of plaintiff's attorney-client privilege. Specifically, plaintiff states that "defendants (who are precluded from directly speaking with [plaintiff] without the presence of his attorneys) want their retained expert, Dr. Tyler, to be able to interview the plaintiff about his damage claim arising out of his hearing loss, out of the presence of his attorneys." (Doc. 50-1, at 5). Dr. Tyler's examination is limited to the *medical* facts at issue. There is no reason to believe Dr. Tyler would ask any questions of plaintiff about communication he has had with his attorneys. Plaintiff has failed to articulate any other means by which defendants may seek to obtain protected information by way of the examination, and the Court is not convinced that such means exist. However, should potentially privileged information be revealed during the examination, plaintiff may petition the Court to prevent the use of that information, as plaintiff sees fit. Further, counsel for either or both parties may be present at the examination, but only as observers. *Counsel are prohibited from interfering with the examination.*

Dr. Tyler has provided a report dated November 14, 2017. (Docs. 50-2, at 2). The deadline for defendants to make their expert witness disclosures was November 15, 2017. (Doc. 36). The Court notes that defendants filed the motion to compel, which presumably would lead to the need for Dr. Tyler to supplement his report, without also

filing a motion to extend the deadline for defendants' expert witness disclosures. However, given that plaintiff filed a motion to extend expert witness deadlines—including defendants' expert witness deadlines—the Court will extend the deadline for defendants' expert witness disclosures as discussed *infra* to allow defendants to supplement Dr. Tyler's report following the IME.

## III.    PLAINTIFF'S MOTION TO COMPEL DISCOVERY

### A.    Meet-and-Confer

A party moving to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1); *see also* LR 37(a). Alternatively, counsel may certify in a written declaration that such a personal conference was impossible "and describe the efforts undertaken to schedule the conference. An exchange of written communications or a single telephone message will not, by itself, satisfy the requirements of this [rule]." LR 37(a). The importance of the meet-and-confer requirement is not to be diminished. *See Williams v. Cent. Transp. Int'l., Inc.*, No. 4:13-CV-2009 (CEJ), 2014 WL 6463306, at *2 (E.D. Mo. Nov. 17, 2014) ("The meet-and-confer requirement is 'not an empty formality.'").

Plaintiff's counsel has certified that he "made a good faith but unsuccessful attempt to resolve the discovery issues raised [in plaintiff's motion to compel] without the intervention of the Court." (Doc. 40, at 2). Thus, the meet-and-confer requirement has been satisfied.

### B.    Discussion

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to

the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). Rule 26(b) is widely acknowledged as "liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (citation omitted). Additionally, in the context of discovery, the standard of relevance is "broader" than in the context of admissibility. *Id.* (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)). Yet, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id.*

Rule 401 of the Federal Rules of Evidence reads: "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. A discovery request "should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Catipovic v. Turley*, No. C11-3074, 2013 WL 1718061, at *2 (N.D. Iowa Apr. 19, 2013) (internal quotation marks and citation omitted).

The party requesting discovery bears the burden of making a threshold showing that the requested discovery would be relevant; once this threshold has been met, the burden of proving irrelevance shifts to the party resisting the motion to compel. *Hofer*, 981 F.2d at 380 (holding that the proponent of discovery bears the initial burden of establishing relevance); *Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Caton*, 136 F.R.D.

682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." (internal citation omitted)).

A party objecting to discovery must state its objections with particularity and may not merely base its objections on allegations that the requested discovery is "overly broad, burdensome, oppressive and irrelevant." *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000) (internal quotation marks and citations omitted). Instead, the objecting party must prove that the "requested documents either do not come within the broad scope of relevance defined pursuant to FED. R. CIV. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." (*Id.* (internal quotation marks and citation omitted)). When a discovery request is overbroad, it may be considered disproportionate to the needs of the case. *Nachurs v. Alpine Solutions, Corp. v. Nutra-Flo Co.*, No. 15-CV-4015-LTS, 2017 WL 1380460, at *4 (N.D. Iowa Apr. 17, 2017); *see generally Maxtena v. Marks*, 289 F.R.D. 427, 434 (D. Md. 2012) (reading the proportionality requirement to limit, *inter alia*, duplicative and overly burdensome discovery).

Plaintiff propounded both interrogatories and requests for production on defendants; defendants responded to each in some fashion, and plaintiff now disputes certain aspects of defendants' responses and objections to the discovery. Plaintiff has failed to articulate exactly why he disputes defendants' responses and objections, however, plaintiff has argued that many of defendants' objections were improperly generalized and non-specific and should therefore be stricken. Plaintiff further requests that the Court compel defendants "to serve complete, responsive, and unambiguous supplemental answers to plaintiff's interrogatories" 3, 7, 10-15, 19, 23, 24, and 26, and

"to serve complete, responsive, unambiguous responses to the requests [to produce] and to produce, without further delay, . . . any additional materials and information responsive to [p]laintiff[']s RFP [1-27]." (Doc. 40, at 1-2).

### 1. Objections

The Court found two categories of objections within defendants' responses to plaintiff's discovery requests. First, defendants lodged objections to many definitions proposed by plaintiff in his discovery requests and, consequently, defendants proposed their own definitions to those defendants deemed objectionable. (Doc. 40-6, at 1-4). Second, defendants objected to numerous interrogatories individually, providing more narrow objections to each of those interrogatories. (*See* Doc. 40-6). These included objections to interrogatories seven through twenty-seven on the basis that those interrogatories exceeded the number allowable under Federal Rule of Civil Procedure 33(a)(1).

The Court will first turn to defendants' objections to eight definitions set forth by plaintiff in both plaintiff's interrogatories and requests for production. In responding to discovery, parties should use "reason and common sense to attribute ordinary definitions to terms and phrases" and "may include any necessary, reasonable definition of such terms or phrases" to clarify their answers. *Pulsecard, Inc. v. Discover Card Srvcs.*, 168 F.R.D. 295, 310 (D. Kan. 1996); *see also McCoo v. Denny's Inc.*, 193 F.R.D. 675, 694 (D. Kan. 2000). Defendants provided such clarifying definitions. In reviewing the alternative definitions defendants provided, the Court finds them unobjectionable.

Plaintiff has not explained why the Court should overrule defendants' objections either with respect to the definitions or the alternative definitions defendants imposed, other than to make the conclusory assertion that the definitions are an attempt by defendants to obfuscate and obstruct discovery. An assertion that defendants "simply 'defined' [their] way out of producing interrogatory answers and hundreds of records of

gun barrel failures" is not legal analysis. Nor does plaintiff identify how the definitions set forth by defendants allowed defendants to "define" their way out of anything. Plaintiff has failed to present the Court with any basis upon which to find defendants' definitions objectionable, and the Court is unable to find any such basis on its own. As such, the Court **declines** to overrule the objections and alternative definitions set forth by defendants in their First Supplemental Answers and Objections to Plaintiff's First Set of Interrogatories (Doc. 40-6).

Turning now to the more narrow objections offered in response to specific interrogatories, the Court again finds plaintiff's briefs to be of little assistance in discerning why plaintiff finds defendants' objections inadequate. To the best of the Court's understanding, plaintiff argues that defendants' objections are non-specific boilerplate objections. However, plaintiff has again failed to point to any specific objection or part of an objection that is supposedly boilerplate. The Court has reviewed defendants' objections and, contrary to plaintiff's assertions, finds that the objections are tailored to each enumerated interrogatory. Further, even where defendants objected to certain interrogatories, defendants still responded to many of those interrogatories, at least in part. (*See, e.g.*, Doc. 40-6, at 31-32). Were defendants willing to withdraw their objections, plaintiff would, apparently, be willing to accept some of those responses as complete. (Doc. 40-15, at 17-25). As such, the Court declines to find that defendants' objections are boilerplate objections, as plaintiff asserts. Plaintiff's motion to strike defendants' objections to plaintiff's requests for production and interrogatories is **denied**.

### 2.     *Number of Interrogatories*

The final issue of defendants' objections concerns defendants' objections based on the number of interrogatories propounded. Federal Rule of Civil Procedure 33(a)(1) provides that a party may propound "no more than 25 written interrogatories, including all discrete subparts." Where a single interrogatory contains numerous questions, the

single enumerated interrogatory and each of its subparts are to be counted as separate interrogatories. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1357 (11th Cir. 1997). Whether a subpart is "discrete" however, can be difficult to determine. For purposes of this determination, the Court will rely upon the test set forth by the District of Nevada: "Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone?" *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997); *see also Precision of New Hampton, Inc. v. TriComponent Prods. Corp.*, No. CV12-2020, 2012 WL 6520139, at *2 (N.D. Iowa Dec. 13, 2012) (relying on the *Kendall* test in determining whether subparts to enumerated interrogatories should be considered "discrete subparts" that each qualify as an additional interrogatory).

Defendants contend only that Interrogatory Number Three contains discrete subparts. (Doc. 47, at 17). Although other enumerated interrogatories may have subparts, defendants have not alleged that these subparts are *discrete* within the meaning of Rule 33(a)(1). Thus, defendants have waived this defense with respect to all other interrogatories. *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."). As such, the Court need only consider whether Interrogatory Number Three's subparts are discrete within the meaning of Rule 33.

Each subpart to Interrogatory Number Three asks defendants to "[i]dentify with specificity any and all facts or circumstances [defendants] allege or rely upon to support the following affirmative defenses and specify for each fact or circumstance, what evidence, or witnesses [defendants] expect to offer to prove each defense listed." (Doc. 40-6, at 6). Plaintiff then lists twenty of defendant's twenty-nine affirmative defenses

and seeks to have defendants provide the information set forth in Interrogatory Number Three with respect to each of those twenty affirmative defenses. (Doc. 40-6, at 6-7). Defendants would have this Court hold that interrogatories requesting such information with respect to multiple affirmative defenses would always constitute separate and discrete interrogatories. (Doc. 47, at 17). The Court, however, is not convinced that this must always be the case. Rather, the Court finds it possible that separate affirmative defenses *may* lead to separate interrogatories when this sort of information is requested, but this is not necessarily the case on all occasions. Therefore, the Court must consider whether any or all of the twenty affirmative defenses may be considered as one interrogatory, or whether each listed affirmative defense is truly a "discrete subpart."

Of the twenty affirmative defenses that were the subject of Interrogatory Number Three, the Court finds that each can be considered a stand-alone question. Plaintiff requests that defendants provide factual information, evidentiary information, and witnesses with respect to each itemized affirmative defense. Although the Court finds it unnecessary to explicitly discuss how each of these twenty affirmative defenses may be differentiated from one another here, the Court is satisfied that each of those affirmative defenses rests on a different legal theory with different informational and evidentiary bases. This may not always be the case and, indeed, certain affirmative defenses in this case may find some overlap in their legal, factual, or evidentiary backgrounds. However, the Court is concerned only with the twenty affirmative defenses enumerated in Interrogatory Number Three. Because the nature of the information requested is necessarily different with request to each of the twenty affirmative defenses, the Court finds that each subsection of Interrogatory Number Three may be considered a separate question. *See Nguyen v. Lowe's Home Ctrs., LLC*, 15CV1085 H NLS, 2015 WL 12672153, at *4 (S.D. Cal. Nov. 19, 2015) ("The Court reviewed Defendant's affirmative defenses in the Answer and finds that each defense may be factually and

logically different. Thus, contrary to Plaintiff's contentions, this interrogatory cannot be grouped into less than nine discrete subparts. . . . Moreover, many courts have concluded an interrogatory that asks a party to identify facts, documents, and witnesses should count these items as discrete separate interrogatories." (citations omitted)).

Therefore, the Court finds that subparts one through twenty of Interrogatory Number Three each constitute a separate interrogatory. As such, plaintiff has propounded forty-six interrogatories on defendants, twenty-one of which are in excess of the twenty-five permitted interrogatories. FED. R. CIV. P. 33(a)(1). Plaintiff has not sought leave for additional interrogatories. The Court notes that defendants have provided substantive responses to some of the interrogatories they contend are in excess of the number permitted. However, the Court will not compel defendants to provide any further responses to Interrogatories Seven through Twenty-Seven, as these are in excess of the twenty-five permitted interrogatories.[4] Thus, plaintiff's motion to compel responses to interrogatories is **denied**.

### 3. *Requests for Production*

Plaintiff has failed to clearly articulate the materials plaintiff seeks to have the Court compel defendants to produce, nor has plaintiff presented the Court with any reason to believe any other requested materials that have gone unproduced are even in existence. However, to the best of the Court's understanding, plaintiff seeks to compel a declaration from defendants that they have made a diligent and good faith search for the materials requested. In the event that defendants have not made such a search and thus cannot provide the requested declaration, plaintiff then requests that the Court order production of all materials requested in Requests to Produce Numbers One through Twenty-Seven.

---

[4] The Court also notes that even if it had not concluded that each of Interrogatory Number Three's subparts is "discrete," Interrogatories Twenty-Six and Twenty-Seven would still have been in excess of the twenty-five permitted.

"In responding to [Rule 34] discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, FED. R. CIV. P. 26(g)(1), the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014) (quoting *Atcherley v. Clark*, No. 1:12cv00225 LJO DLB (PC), 2014 WL 4660842, at *1 (E.D. Cal. Sept. 17, 2014)). Here, defendants have not stated that they undertook a diligent and good faith effort to locate documents responsive to the above requests and that they have produced all responsive documents. At argument on the motion, defendants certainly implied that they had done so. Defendants' production of voluminous materials in response to plaintiff's requests also suggests defendants have conducted a diligent and good faith attempt to produce all non-privileged materials requested. Nevertheless, the Court will order defendants to supplement their discovery responses to explicitly state that they have diligently and in good faith searched for responsive documents and have produced all responsive documents they located. *See Lewton v. Divingnzzo*, No. 8:09CV2, 2010 WL 1630719, at *5 (D. Neb. Apr. 21, 2010) (directing party to serve amended responses "indicating (a) whether responsive documents do or do not exist and (b) whether all responsive documents have been produced after a diligent and good faith effort to locate and identify responsive materials."). The Court will accept defendants' declaration as true. Accordingly, the Court **grants in part and denies in part** plaintiff's motion to compel responses to plaintiff's requests to produce documents.

### 4. *Rule 30(b)(6) Deposition*

Plaintiff served a notice of Rule 30(b)(6) deposition on defendants. (Doc. 40-1, at 9). In response, defendants proposed that plaintiff depose two different corporate representatives in two different cities on two different days to fulfill the Rule 30(b)(6) requirements. *See* FED. R. CIV. P. 30(b)(6) ("The [organization being deposed] must . . .

designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and [the organization] may set out the matters on which each person designated will testify."). Plaintiff objects to this suggestion and, to the extent the Court can ascertain, is willing to depose two different representatives but is unwilling to travel to two different cities to do so. As such, plaintiff requests that the Court compel defendants "to promptly respond to any future Amended Notice of 30(b)(6) Corporate Deposition Notices, by promptly identifying the designated witnesses, and to provide the 30(b)(6) witness or witnesses in one location, on consecutive days, to avoid unnecessary expense and delay." (Doc. 40, at 2). The Court cannot compel defendants to comply with a notice that has yet to be served or even necessitated. Therefore, plaintiff's request with respect to a future Rule 30(b)(6) notice is **denied** as unripe. Because plaintiff has limited his request to concern only *future* notices, the Court will not rule on any existing notice.

In summary, the Court **grants in part and denies in part** plaintiff's Motion to Compel Discovery (Doc. 40) as stated above.

## IV.    MOTION FOR EXTENSION OF TIME

### A.    Background

The final two motions the Court must confront are plaintiff's Motion to Continue Trial and Modify Scheduling Order ("motion to continue") (Doc. 42), and plaintiff's subsequent Alternative Motion to Modify/Extend Scheduling Order and Discovery Plan ("motion to modify scheduling order") (Doc. 60).

On November 8, 2017, plaintiff filed his motion to continue, alleging that the volume of discovery in this case would take longer to review than plaintiff would have under the current scheduling order, that defendants' failure to timely produce discovery materials hindered plaintiff's litigation, and that plaintiff would need additional time to review any materials produced pursuant to plaintiff's motion to compel. (Doc. 42). Therefore, plaintiff requested that a continuance be granted and the scheduling order be

modified accordingly. (*Id.*). On November 22, 2017, defendants filed their resistance to plaintiff's motion to continue, essentially arguing that defendants produced discovery materials in a timely fashion and that if any materials were not produced pursuant to plaintiff's first requests to produce, they were not produced simply because they were not requested. (Doc. 48). Thus, defendants argue, any delay plaintiff experienced in receiving these materials was due to plaintiff's failure to request those materials. (*Id.*). As a result, defendants argue, no continuance should be granted to review these materials. (*Id.*). However, defendants expressed that they had no objection to granting extensions to deadlines that had not passed as of November 22, 2017, as long as those modified deadlines complied with the local rules. (*Id.*, at 9). Plaintiff filed a reply reiterating plaintiff's initial position. (Doc. 54).

On December 5, 2017, plaintiff filed his motion to modify the scheduling order. (Doc. 60).[5] During the December 6, 2017 hearing, defense counsel indicated that defendants had no objection to modifying the scheduling order so long as only future deadlines were affected, and the dispositive motions deadline and trial date remained firm.

### B. Discussion

Federal Rule of Civil Procedure 16 requires the Court to issue a scheduling order that includes certain deadlines, including the deadlines for completing discovery. The Rule 16 scheduling order may be modified only for good cause. FED. R. CIV. P.

---

[5] Local Rule 7(k) requires that "[a]ll non-dispositive motions must contain a representation that counsel for the moving party personally conferred in good faith with counsel for all other parties . . . concerning the motion, and a statement of whether or not the other parties consent to the motion." Plaintiff's motion did not comply with this rule. Instead, plaintiff stated "Defendants are on the record as being unopposed to the modification of [the requested] deadlines." (Doc. 60, at 2). Although defendants were unopposed to some proposed amendment of deadlines as of November 22, 2017, plaintiff's motion to modify the scheduling order was filed nearly two weeks after defendants indicated assent.

16(b)(4); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). A party moving to modify a scheduling order bears the burden of showing "diligence in attempting to meet the order's requirement." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006). *See also* FED. R. CIV. P. 16(b)(4); Local Rule 16(f) ("The deadlines established by the Rule 16(b) and 26(f) scheduling order and discovery plan will be extended only upon written motion and a showing of good cause."). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006).

The Court finds that plaintiff has not shown good cause to continue the trial. Given the Court's heavy docket and need "to secure the just, speedy, and inexpensive determination of every action and proceeding," the good cause standard with respect to motions to continue is particularly difficult to meet. FED. R. CIV. P. 1. Plaintiff has failed to meet the standard here. Plaintiff has, however demonstrated that good cause exists to modify the scheduling order. The following deadlines shall now govern this matter:

| | |
|---|---|
| Defendants' Expert Witnesses:[6] | February 13, 2018 |
| Plaintiff's Rebuttal Experts: | March 13, 2018 |
| Completion of Discovery: | April 2, 2018 |
| Dispositive Motions: | April 30, 2018 |
| Trial Ready: | September 28, 2018 |
| Trial: | November 19, 2018 |

---

[6] Although this deadline was not a "future" deadline as contemplated in defendants' resistance to plaintiff's motion to continue (Doc. 48), the Court finds that extending the deadline for defendants to disclose their expert witnesses would permit Dr. Tyler sufficient time to conduct the IME, formulate opinions, and supplement his opinion. Plaintiff will not be prejudiced by extending this deadline. Plaintiff initially proposed extending this deadline (Doc. 42, at 1) and has yet to disclose his rebuttal witnesses. As such, the Court finds it appropriate to extend this deadline.

To be clear, the Court reiterates that the parties should consider the trial date firm. As the dispositive motions deadline is tethered to the trial date, the parties should likewise consider the dispositive motions deadline firm. *See* LR 16(g) ("The deadline . . . for filing dispositive motions must be at least 150 days before the proposed ready-for-trial date.").

Plaintiff has also requested that the Court extend the deadline for plaintiff to disclose his expert witnesses. (Doc. 42, at 1). However, this request was made more than three weeks after the deadline had passed. As a result, plaintiff bears the burden of showing that his failure to move to extend this deadline prior to its expiration was due to excusable neglect. FED. R. CIV. P. 6(b)(1)(b); *Nelson v. Bitters*, 2017 WL 360921, at *4 (N.D. Iowa Jan. 24, 2017). When considering whether a party has demonstrated excusable neglect, the Court must consider "all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993). These circumstances are to include: 1) the danger of prejudice to the non-moving party; 2) the length of delay and its potential impact on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and 4) whether the movant acted in good faith. *Treasurer, Trs. of Drury Indus., Inc. Health Care Plan and Tr. v. Goding*, 692 F.3d 888, 893 (8th Cir. 2012) (citations omitted).

In his motion, plaintiff did not acknowledge that his motion was brought subsequent to the expiration of plaintiff's expert witness deadline. Plaintiff further failed to offer any justification to establish excusable neglect for failing to comply with the deadline or for failing to file the motion for an extension before the deadline expired. Granting the motion at this late stage would have a significant effect on judicial proceedings. Defendants have already disclosed their expert witnesses and plaintiff is

now limited to disclosing only rebuttal experts.[7]  If plaintiff were now permitted to disclose additional experts with the benefit of having defendants' expert witness disclosures, defendants would be prejudiced because this would permit plaintiff to designate experts for his case-in-chief having already become privy to defendants' theories.  To the extent plaintiff wishes to rebut defendants' experts' opinions, he may do so through his rebuttal experts.  The Court therefore **grants in part and denies in part** plaintiff's Alternative Motion to Modify/Extend Scheduling Order and Discovery Plan (Doc. 60) and **denies** plaintiff's Motion to Continue Trial Date and to Modify Scheduling Order (Doc. 42).

## V.  CONCLUSION

For the reasons stated, the Court orders as follows: defendants' Motion to Require Plaintiff to Submit to an Independent Medical Examination (Doc. 39) is **granted**; plaintiff's Motion to Compel Discovery (Doc. 40) is **denied in part and granted in part**; plaintiff's Motion to Continue Trial and Modify Scheduling Order (Doc. 42) is **denied**; and plaintiff's Alternative Motion to Modify/Extend Scheduling Order and Discovery Plan (Doc. 60) is **granted in part and denied in part**.

**IT IS SO ORDERED** this 13th day of December, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa

---

[7] Although the Court has chosen to extend the deadline for defendants to disclose their expert witnesses, this extension is of no consequence in considering whether to extend plaintiff's expert witness deadline.